# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| STEVE D. LANDERS | CIVIL ACTION |
|---|---|
| VERSUS | NO: 08-1293-MVL-SS |
| KEVIN GROS OFFSHORE, L.L.C. | |

## ORDER

LANDERS' MOTION FOR SANCTIONS (Rec. doc. 160)

**GRANTED**

Before the undersigned is the motion of the plaintiff, Steve D. Landers ("Landers"), for sanctions against the defendant, Bollinger Shipyards, Inc. ("Bollinger"), and its attorney, Robert Reich.

## PROCEDURAL BACKGROUND

On March 17, 2008, Landers filed a seaman's complaint for damages from Kevin Gros Offshore, LLC ("Gros"). He alleges that: (1) he was assigned to an offshore supply vessel; and (2) he was injured while removing the gangway from the vessel as it prepared to depart from a dock. Rec. doc. 1. On June 26, 2008, Landers was deposed by Gros. Rec. doc. 95. After the deposition, Gros filed third party demands against Bollinger and Berry Bros. General Contractors, Inc. ("Berry Bros."). Rec. docs. 9 and 16. Landers filed an amended complaint in which Bollinger and others were named as defendants. Rec. doc. 137.

On January 13, 2009, Landers was re-deposed. On January 16, 2009, he filed a motion for a protective order in which he contended that counsel for Bollinger harassed and abused him during January 13, 2009 deposition. Rec. doc. 95. On January 26, 2009, there was telephone discovery

conference at which the parties were ordered to complete Landers' deposition on February 10, 2009. Time limits were set for the examination by each party. The minute entry provided that the protective order was granted in part and denied in part. The parties were ordered to inspect the vessel at the Bollinger yard in LaRose by January 29, 2009. Rec. doc. 118. On February 10, 2009, Landers' deposition was concluded. On April 5, 2009, Landers filed the motion for sanctions.[1]

## APPLICABLE LAW

Pursuant to Fed. R. Civ. P. 30(c)(1), "[t]he examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence. . . ." Id. "During the taking of a deposition the witness has, in general, the same rights and privileges as would a witness testifying in court at a trial." 8A Wright, Miller and Marcus, Federal Practice and Procedure §2113 (2d ed. 1994).

> As officers of the court, counsel are expected to conduct themselves in a professional manner during a deposition. A deposition is intended to permit discovery of information in the possession of the deponent or perpetuate the testimony of the deponent. In either case, it is to be conducted in a manner that simulates the dignified and serious atmosphere of the courtroom. Thus, the witness is placed under oath and a court reporter is present. Conduct that is not permissible in the courtroom during the questioning of a witness is ordinarily not permissible at a deposition. . . A deposition is not to be used as a device to intimidate a witness or opposing counsel so as to make that person fear the trial as an experience that will be equally unpleasant, thereby motivating him to either dismiss or settle the complaint.

Ethicon Endo-Surgery v. U.S. Surgical Corp., 160 F.R.D. 98, 99 (S.D. Ohio 1995). Pursuant to Fed. R. Civ. P. 30(c)(2),

> An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to

---

[1] Landers settled his claims against Gros and Berry Brothers. The only defendant left in the case is Bollinger. The case was set for trial on May 18, 2009 (Rec. doc. 187), but it was continued and reset for January 14, 2010 (Rec. doc. 214).

preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Id. "Depositions frequently have been unduly prolonged, if not unfairly frustrated, by lengthy objections and colloquy, often suggesting how the deponent should respond." Fed. Rule Civ. P. 30(c) Advisory Committee's Note, 1993 amendments. Appropriate objections include the form of the question or the responsiveness of an answer. Id. "Directions to a deponent not to answer a question can be even more disrupting than objections." Id. Pursuant to Fed. R. Civ. P. 30(d)(2),

> The court may impose an appropriate sanction–including the reasonable expenses and attorney's fees incurred by any party–on a person who impedes, delays, or frustrates the fair examination of the deponent.

Id.

> The rule also explicitly authorizes the court to impose the cost resulting from obstructive tactics that unreasonably prolong a deposition on the person engaged in such obstruction. This sanction may be imposed on a non-party witness as well as a party or attorney, but is otherwise congruent with Rule 26(g).

Fed. Rule Civ. P. 30(d) Advisory Committee's Note, 1993 amendments.

## DEPOSITIONS

Landers was deposed on three separate occasions.

A. <u>June 26, 2008 Deposition</u>.

The first deposition was on June 26, 2008. Bollinger and Berry Bros were not parties at this time. Only counsel for Landers and Gros participated in the deposition. No issues are raised concerning the conduct of counsel at this deposition.

B. <u>January 13, 2009 Deposition</u>.

The second deposition was on January 13, 2009. Counsel for Bollinger asked all of the questions at the second deposition. Rec. doc. 160 (Exhibit 1).

After five simple questions, counsel for Bollinger asked Landers, "[w]hat are some of the things you can do?" Rec. doc. 160 (Exhibit 1 at 9). Counsel for Landers objected that the question was overly broad. Counsel for Bollinger referred to Landers' ability to walk and sit and indicated that it appeared to him that Landers could do these tasks comfortably. Counsel for Landers objected that the statement was a characterization. Id. at 9. Argument ensued among counsel. Counsel for Landers contended that counsel for Bollinger was interrupting his objection while counsel for Bollinger objected that counsel for Landers was interrupting his question. The parties were unable reach the undersigned by telephone because a settlement conference in another case was in progress. Id. at 11. The record demonstrates that counsel did not conduct themselves in a manner that simulates the dignified and serious atmosphere of the courtroom.

Counsel for Bollinger began a series of questions concerning any attempts by Landers to seek employment. The question on page 27 of the deposition requested a "reason." Counsel for Landers objected that it had been asked and answered. Landers answered the question and gave his reasons. The next question by counsel for Bollinger was subject to an objection. Landers properly answered the question. Counsel for Bollinger asked Landers whether he had done anything to find a job. Landers responded, "[n]o sir." Id. at 29. Counsel for Bollinger asked whether he responded to want-ads and went to the Louisiana employment office. Counsel for Landers objected that the questions were cumulative, harassing, belittling and humiliating. Id. at 30. Counsel for Bollinger continued with a similar line of questions. Counsel for Landers objected. Id. at 31. A similar question followed. Counsel for Landers initially instructed the witness not to answer, but them permitted him to do so. Id. at 32. Once Landers testified that he had not done anything to find a job, the questions by counsel for Bollinger about specific actions, for example whether he went to an

4

employment office, were cumulative and harassing.

On page 128, counsel for Landers objected to the argumentative nature of counsel for Bollinger's tone of voice. On page 129, counsel for Landers objected that counsel for Bollinger interrupted Landers' answer with another question. There are numerous instances where it is clear that counsel for Bollinger was interrupting the witness. Id. at 146, 155, 170-71, 177 and 187. The repeated interruption of the witness by counsel for Bollinger would not be permitted in a court room. Counsel for Bollinger acted improperly.

On pages 138 counsel for Bollinger interrupted the witness during his answer. Counsel for Landers objected and asked that the witness be allowed to complete his explanation. Counsel for Landers also referred to this as a "critical question" and accused counsel for Bollinger of "trying to trick" Landers. Id. at 138-39. It was improper for counsel for Landers to make the reference to a critical question and describe counsel for Bollinger as trying to trick Landers.

On pages 155-56, counsel for Bollinger characterized Landers' testimony and the record, followed by a question. The question was improper. Instead of objecting to the question, counsel for Landers instructed him not to answer.

C.  February 10, 2009 Deposition.

After the second deposition, Landers and counsel for the parties inspected the vessel at the Bollinger yard in LaRose. The third deposition was on February 10, 2009. Counsel for Bollinger asked most of the questions at the third deposition. Rec. doc. 160 (Exhibit 2).

Counsel for Bollinger pressed Landers concerning the certainty of his recollection. Id. at 16-17. Counsel for Landers objected that the question was repetitious and directed him not to answer it. Counsel for Landers objected to the aggressively hostile tone of voice used by counsel for

Bollinger. Id. at 17. Counsel for Bollinger replied that he was not all hostile. Counsel for Gros stated "[y]ou are yelling at him." Id. at 17. On page 25, counsel for Bollinger interrupted the witness.

On page 33, counsel for Bollinger characterized Landers' testimony concerning his description of the vessel, the position of cargo on the vessel and the accessibility of the vessel's gangway. Landers replied that he "was mistaken about that." Counsel for Bollinger accused him of changing his testimony. Landers explained that he "just didn't remember it until I seen the boat." Id. at 34. Counsel for Bollinger responded that "you've been to another location and you've changed your testimony again." Id. at 34. Landers responded that he forgot about the Barite pipes when he was describing the condition of the vessel. Id. at 34. Counsel for Bollinger challenged his ability to remember the Barite pipes. Counsel for Sherman instructed the witness not to answer. Id. at 35. As counsel for Bollinger pressed Landers about his inability to recall the Barite pipes, Landers testified that he was not lying and that he simply forgot the Barite pipes were there. Id. at 36. As Landers noted, he was testifying more than two and half years after the accident.[2]

On page 39, counsel for Bollinger asked Landers about conditions at a dock other than the one at which the accident occurred. Landers replied that he did not recall anything about what was done at the first dock. Counsel for Bollinger persisted in asking questions about the location of the gangway at the first dock, whose gangway was used at the first dock, and whether he slid the gangway across the first dock. Each time Landers testified that he recalled nothing about the first

---

[2] Landers' explanation for the failure to recall the Barite pipes is perfectly reasonable. See Southern Railway Company, v. Lanham, 403 F.2d 119, 127-28 (5th Cir. 1968) (Statements taken from the witnesses shortly after the accident constitute unique catalysts in the search for truth in that they provide an immediate impression of the facts that cannot be recreated or duplicated by a deposition that relies upon memory).

6

dock. Counsel for Landers ultimately objected and instructed him not to answer. Id. at 39-42.

At this point counsel for Landers contacted the undersigned, and there was a telephone conference. Id. at 42-59. Counsel for Bollinger was instructed to stop yelling, keep the tone of his voice under control and remain calm.[3] Id. at 53 and 56. He was instructed to let the witness answer his questions to the best of his ability. Id. at 57. Counsel for Landers was told that he could not instruct the witness not to answer and he was to object to the form and make objections continuing.

## **CONCLUSION**

The behavior of counsel for Bollinger in the deposition was improper. He repeatedly interrupted the witness and would not let him complete his answer and provide his explanation. His tone of voice can best be described as yelling. Many of his questions were improper. The instruction by counsel for Landers not to answer certain questions was improper, Fed R. Civ. P. 30(c)(2), but, under the circumstances, it was understandable. The record demonstrates that counsel for Bollinger repeatedly failed to conduct his examination of Landers as he would at the trial and denied him the same rights and privileges due a witness testifying in court at a trial. Sanctions will be imposed.

IT IS ORDERED as follows:

1. Landers' motion for sanctions (Rec. doc. 160) is GRANTED.

2. **Within ten (10) working days of the entry of this order**, counsel for Bollinger shall deliver to counsel for Landers a check payable to Landers in the amount of $500.00.

---

[3] Landers presented a recording of part of the deposition as evidence of the counsel's tone of voice and his improper questioning. Rec. doc. 173. It was indeed loud and harassing.

3. The sanctions shall be paid by counsel for Bollinger and Bollinger shall not be invoiced for the sanction.

4. Within ten (10) working days of the entry of this order, counsel for Bollinger shall: (a) deliver a copy of this order to Bollinger; and (b) certify in writing to the undersigned that he has done so.

New Orleans, Louisiana, this  13th  day of July, 2009.

                                             **SALLY SHUSHAN**
                                    **United States Magistrate Judge**